# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | Case No.: 2:13-cr-00355-GMN-CWH |
| vs. ) | **ORDER** |
| GREGORY VILLEGAS, et al., ) | Motion (#176) |
| Defendant. ) | |

    This matter is before the Court on the Government's Motion to Restrict Defendant Villegas' Phone Privileges and Renew Order Prohibiting Contact with Potential Government Witnesses (#176), filed on May 6, 2015. The Defendant filed his Response (#179) on May 11, 2015. The Court conducted a hearing in this matter on June 1, 2015. Following the hearing, the Government filed a Supplement (#185).

## BACKGROUND AND DISCUSSION

    The indictment in this case charges Defendant Gregory Villegas and his co-defendants with conspiracy to commit wire fraud and wire fraud by operating a telemarketing business and website which solicited money from small businesses on the false promises that the customers would receive government grants. Following Defendant Villegas' arraignment on September 12, 2013, the Court released him from custody on conditions of pretrial release and subject to pretrial services supervision. Although the Government did not oppose Defendant's pretrial release, it expressed the concern that Defendant Villegas and others would continue to engage in fraudulent activity and therefore requested conditions to protect against that risk. The pretrial release conditions imposed by the Court included the condition that Defendant was to "avoid all contact, directly or indirectly,

with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to: Co-defendants except in the presence of counsel and customers of grant funding companies." *Order Setting Conditions of Release (#25), pg. 3.* Defendant was also prohibited from having access to the internet through computers or connecting devices such as PDA's, cell phones, Playstations, etc.; from text messaging; from using any identifiers, access devices or accounts unless under his true name; and from entering any casinos. *Id., pg. 4.*

On June 18, 2014, the Government filed a petition for action on conditions of pretrial release alleging that Defendant Villegas violated his pretrial release conditions by contacting persons on the Government's potential witness no contact list; visiting casinos; and by having indirect access to another person's bank account. *Petition for Action on Conditions of Pretrial Release (#117).* Defendant appeared in court on the petition on June 24, 2014 and was detained pending the revocation hearing. *Minutes of Proceedings (#119); Order of Detention (#125).* On August 19, 2014, the Government filed an amended petition which included the charges in the original petition and further alleged that Defendant Villegas violated his conditions of pretrial release by participating in a new fraud scheme in May 2014; possessing a driver's license bearing a false address; submitting a vehicle purchase application bearing a false social security number, address and employment information; and by text messaging. *Amended Petition (#138).* The revocation hearing, which was continued several times by stipulation of the parties, was held on January 5, 2015. Based on the evidence presented, the Court found that Defendant Villegas violated the conditions of his pretrial release as alleged in the amended petition. The Court therefore revoked Defendant's pretrial release and ordered that he be detained pending trial. Defendant's trial is currently set for July 27, 2015.

The Government alleges that Defendant Villegas has violated the telephone usage rules and of the Southern Nevada Detention Center ("Detention Center") by using the personal identification numbers of other detainees to make telephone calls. The Government introduced exhibits at the hearing, including the "Southern Nevada Detention Center Detainee Handbook" which contains a section regarding "Telephone Usage." This provision states in relevant part as follows:

> There are telephones in each housing unit for detainee use. All calls are collect calls for the person being called. Telephone conversations may be monitored and/or recorded for security reasons. Use of the telephones is on a first come first served basis. If you need to call the phone system's customer service dial *9 to talk with a telephone representative. In addition to the weekly commissary allowance, detainees can purchase $50.00 in prepaid phone time each week.
>
> . . .
>
> Collect calls cannot be made to all phones. For example, cell phones cannot receive collect calls and only certain land line phones will allow collect calls. When someone is called they must agree to accept the collect call. There is a limit of $100 per month per phone number called collect. After the limit is reached only debit (phone time purchased from the commissary) or prepaid collect calls (family buys collect phone time for their number) can be made to that number.
>
> Phone calls will be recorded with the exception of legal calls.

*Government Exhibit C, pg. C00032.*

The Government has also introduced a document entitled "Facility and Unit Admission and Orientation," signed by Defendant Villegas on July 4, 2014, which indicates that various Detention Center policies were reviewed with him, including "5. **Business**: Commissary, Detainee Accounts; Telephone Procedures." *Government Exhibit C, pg. C00044.*

Based on information provided by the Detention Center, the Government states that each detainee or "inmate" is assigned a personal identification number ("PIN") to be used in making telephone calls. "[T]he inmates are told during the intake process that their PIN numbers are private and that inmates can only use their own PIN numbers to make telephone calls." *Government Exhibit C, (FBI 302 Report) pg. C00001.* Detention Center Sergeant Kurt Brauner informed the FBI that Detention Center Policy No. 16-100 provides that:

> 2. Each inmate will be assigned a Personal Identification Number (PIN) to use when making calls.
>
>   a. The PIN must be entered when prompted on the telephone system in order to secure an outgoing telephone call.
>
>   b. Inmates will use only their assigned PIN. Using another inmate's PIN is not allowed and will result in disciplinary action.

*Government Exhibit C, pg. C00007.*

1    The Government states that on April 16, 2015, Detention Center Sergeant Kurt Brauner
2 informed the FBI that detainee Robert Barrows had filed a complaint stating that his telephone
3 funds were being stolen by an unknown detainee. *Government Exhibit A, pg. A00001.* Sergeant
4 Brauner conducted an investigation and determined that Defendant Villegas had placed telephone
5 calls on Barrows' account starting in November 2014. He determined that Defendant Villegas
6 made 277 telephone calls on Robert Barrows' account. In addition Defendant Villegas made 12
7 calls on the account of detainee Solomon Zemedhun, 32 calls on the account of Robert Nelson and
8 32 calls on the account of Michael Palalay. *Government Exhibit B, pg. B00001.* Sergeant Brauner
9 also determined that Defendant Villegas directed family members to place money in Barrows'
10 account so that Villegas could make telephone calls using that account. Sergeant Brauner
11 identified the telephone numbers of three individuals to whom Villegas made telephone calls using
12 Barrows' account. One of these individuals was identified as Jimmy Barraza. *Government Exhibit*
13 *A, pg. A00001*

14    FBI agent Richard Beasley testified at the hearing that Jimmy Barraza is one of the
15 individuals listed on the Government's potential witness no contact list. Agent Beasley listened to
16 the recorded telephone calls between Defendant Villegas and Mr. Barraza. He testified that
17 Defendant Villegas did not discuss any substantive matters relating to the indictment. Agent
18 Beasley testified that during telephone calls with other individuals, including his mother, Defendant
19 discussed betting odds on various sports teams. The Government asserts that Defendant may have
20 used those telephone calls to have his mother or others make bets for him.

21    Defendant Villegas did not testify at the hearing. Defendant did not contest the
22 Government's assertion that he used the PINs of other detainees to make telephone calls. He also
23 did not contest the Government's assertion that he did not have Robert Barrows' permission to use
24 his PIN to make telephone calls.[1] Defendant argued, however, that the Government failed to
25 establish that he was, in fact, informed of the provisions in the Detainee Handbook regarding

---

[1] The Government did not establish that Defendant used Mr. Zemedhun's, Mr. Nelson's or Mr. Palalay's PINs without their permission.

1  telephone use or that he was informed that using another detainee's PIN violated Detention Center
2  policy and would subject him to disciplinary action.

## DISCUSSION

The Government argues that the Court should restrict Defendant Villegas' telephone access to telephone calls to his attorney. In support of this restriction, the Government states that "[i]n consultation with the FBI, [Government counsel] has learned that the Southern Nevada Detention Center requires a court order to restrict the defendant's telephone access to the telephone to calls with his attorney. Further, because telephones are placed in the common cell unit, the jail lacks staffing and resources to monitor each call the defendant makes to ensure that he is not using other inmate's PINS or contacting potential government witnesses. Thus, enforcing a court order restricting defendant's access to calls with his attorney may require movement to a different security environment at the facility, and even with this action staff cannot ensure that the defendant could not circumvent telephone privilege rules." *Motion (#176), pg. 4.*

The Government states that it does not seek to restrict Defendant Villegas' telephone access as punishment for his violation of the Detention Center's rules or for his conduct in contacting an individual on the Government's no contact witness list. Rather the Government argues that the proposed restriction is reasonably necessary to prevent Defendant Villegas from using the PINs of other detainees to circumvent the Detention Center's or the Government's ability to monitor his non-attorney telephone calls and potentially engage in communications with victims or witnesses, or engage in other misconduct such as occurred while Defendant Villegas was on pretrial release.

In *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002), Valdez, a federal pretrial detainee, brought a civil rights action against the federal prosecutor and state jail officials alleging that his constitutional rights were violated during his detention in state jail as a result of restrictions placed on his telephone access. In that case, the prosecutor sent a letter to the U.S. Marshal requesting that Valdez's telephone access be restricted to calls only to his attorney. This request was made after a superceding indictment was returned adding five new defendants, none of whom were currently in custody. The prosecutor was concerned that Valdez might use the telephone to warn the defendants about the indictment. In response to the prosecutor's request, the state officials placed Valdez in

administrative segregation during which he was not permitted to make or receive any telephone calls, save a daily telephone call from his attorney. In order to call his attorney, Valdez had to make a written request. Valdez was also allowed to confer with his attorney in person and receive in person visits from friends and family. The restriction was lifted after another defendant in the case was released from custody which the prosecutor believed rendered the purpose of the restriction moot.

In affirming the district court's order granting summary judgment to the defendants, the Ninth Circuit stated:

> Pretrial detainees have a substantive due process right against restrictions that amount to punishment. *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440-41 (9th Cir. 1991) (en banc). This right is violated if restrictions are "imposed for the purpose of punishment." *Bell*, 441 U.S. at 535, 99 S.Ct. 1861. There is no constitutional infringement, however, if restrictions are "but an incident of some other legitimate government purpose." *Id.* In such a circumstance, governmental restrictions are permissible. *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095.

*Valdez*, 302 F.3d at 1045.

The court noted that punitive intent may be inferred from the nature of the restriction. Such an inference will not be made, however, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.*, at 1045-46. In applying this test, the court first looks to the government's interest in imposing the restriction. The court found that the telephone use restriction was imposed to prevent Valdez from tipping off his co-conspirators about the recently issued indictments and that the government had a legitimate interest in ensuring the safety of police officers when executing arrests and in preventing a detainee from helping his co-conspirators elude arrest. *Id.*, at 1046.

Second, the court determines whether the restriction is reasonably related to the governmental interest or whether the restriction constitutes an exaggerated response. *Valdez*, 302 F.3d at 1046. A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit." Nor does it require showing a "least restrictive alternative." "Otherwise, every administrative judgment would be subject to the possibility that

some court somewhere would conclude that it had a less restrictive way of solving the problem at hand." *Id.*, at 1046, quoting *Thornburgh v. Abbott*, 490 U.S. 401, 410-12, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).  It also does not matter whether the court agrees with the government or whether the policy in fact advances the government's legitimate interests.  The only question is whether the government's judgment was rational, i.e. whether the government might reasonably have thought that the policy would advance its interests.  The court found under the facts in *Valdez* that the restriction on plaintiff's telephone access was reasonable because it was limited to the period during which the co-defendants were still at large and was terminated when the restriction would no longer be effective.  The restriction also did not interfere with Defendant's ability to have telephonic and in-person contact with his attorney, or in-person contact with friends and relatives.

In this case, the Government has shown that Defendant Villegas violated the Detention Center's rules governing detainee telephone usage by using the PINs of other detainees.  The circumstances support the conclusion that Defendant engaged in this conduct to circumvent the Detention Center's and the Government's ability to monitor his non-attorney telephone communications to prevent him from contacting witnesses or victims or from engaging in other misconduct.  Given Defendant Villegas' previous misconduct while on pretrial release, the Government's concerns are legitimate.

In contrast to the situation in *Valdez* where the court was reviewing the legality of past government conduct, the Government in this case asks the Court to impose restrictions on Defendant's telephone access–specifically to restrict his telephone usage to telephone calls with his attorney.  The Government somewhat cryptically states that imposition of this restriction "may require [Defendant's] movement to a different security environment at the facility."  The Court infers that this means some form of administrative segregation.  Besides the additional confinement that such a restriction may impose on Defendant, this restriction is likely to severely limit Defendant's contact with family and friends given the fairly remote location of the Detention Center in Pahrump, Nye County, Nevada.  Such restrictions may be necessary in the absence of other reasonable alternatives.  The Government has not, however, presented any testimony by Detention Center officials, or by the United States Deputy Marshal who handles detainee issues,

about the available methods or means that can be employed to supervise Defendant's telephone use and prevent him from circumventing the PIN system. The Court will not impose the requested restriction without a more complete showing by the Government of the effect of the proposed restriction on Defendant's confinement within the Detention Center and a showing that other less restrictive measures cannot reasonably be imposed to achieve the Government's legitimate interests. Accordingly,

**IT IS HEREBY ORDERED** that the Government's Motion to Restrict Defendant Villegas' Phone Privileges and Renew Order Prohibiting Contact with Potential Government Witnesses (#176) is **granted** as follows: Defendant Gregory Villegas shall not contact by telephone or otherwise individuals who are on the Government's no-contact witness list previously provided to the Defendant's counsel.

**IT IS FURTHER ORDERED** that the Government's motion to restrict Defendant's telephone usage to telephone calls with his attorney is **denied**, without prejudice. The Government may renew its motion by providing the Court with a reasonably complete description of what such a restriction will entail with respect to Defendant Villegas' confinement within the Detention Center, and a demonstration that there are no lesser restrictive measures that can be employed to supervise the Defendant's use of the telephone and ensure that he does not use the PINs of other detainees. Such a showing may be made by testimony from Detention Center officials, and/or the United States Deputy Marshal, who is familiar with the operations of the Detention Center.

DATED this 10th day of June, 2015.

*George Foley Jr.*
GEORGE FOLEY, JR.
United States Magistrate Judge