**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:13-cr-00355-GMN-CWH-1 |
| vs. ) | |
| ) | **ORDER** |
| GREGORY VILLEGAS, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Pending before the Court is the Government's Motion to Apply *Honeycutt* to Defendant Gregory Villegas's ("Villegas") Forfeiture Order ("*Honeycutt* Mot."), (ECF No. 388).  Villegas filed a Response, (ECF No. 395), and the Government filed a Reply, (ECF No. 396). Following a hearing on the Motion, the Court ordered supplemental briefing. (*See* Mins. Proceedings, ECF No. 400).  The Government filed a Supplemental Brief, (ECF No. 405), Villegas filed a Supplemental Response, (ECF No. 410), and the Government filed a Supplemental Reply, (ECF No. 413).

For the reasons discussed below, the Court **GRANTS** the Government's Motion and will enter a criminal forfeiture money judgment against Villegas in the amount of $5,261,218.

## I.      BACKGROUND

This case arises out of a fraudulent telemarketing scheme perpetuated by Villegas and several co-conspirators.  From March 1, 2008, to May 2, 2012,[1] Villegas and his co-conspirators induced small business owners to send them a payment by falsely promising that

---

[1] The Superseding Indictment extends this date to July 23, 2014, but the Plea Agreement still reports that the conspiracy expired on May 2, 2012. (Indictment 3:2–3, ECF No. 1) (reporting that the conspiracy expired on May 2, 2012); (Superseding Indictment 3:2–3, ECF No. 217) (reporting that the conspiracy expired on July 23, 2014); (Villegas Plea Agreement 4:13–15, ECF No. 298) (reporting that the conspiracy expired on May 2, 2012).

the businesses would receive grant funding in return. (Villegas Plea Agreement 4:13–22, ECF No. 298). However, Villegas never intended to provide grant funding and used the payments from victims as personal profit, which he also shared with his co-conspirators. (*Id.* 6:6–8). To execute this scheme, Villegas directed his co-conspirators to incorporate fraudulent grant-funding companies, open bank accounts for those companies, and collect and deposit payments from victims. (*Id.* 6:3–12). The parties agree that the readily provable number of victims defrauded is at least 390 with a corresponding total loss of $5,261,218. (Gagnon Plea Agreement 7:12–13, ECF No. 148); (Gines Plea Agreement 7:8–9, ECF No. 157); (Villegas Plea Agreement 7:18–19).

Villegas and two of his co-conspirators, Christine M. Gagnon ("Gagnon") and Mickey Gines ("Gines"), were indicted on one count of Conspiracy to Commit Wire Fraud in Connection with Telemarketing, in violation of 18 U.S.C. §§ 1349 and 2326, and 31 counts of Wire Fraud, in violation of 18 U.S.C. § 1343. Gagnon and Gines both pleaded guilty to Conspiracy to Commit Wire Fraud in Connection with Telemarketing. (Gagnon Mins. Proceedings, ECF No. 147); (Gines Mins. Proceedings, ECF No. 156). As agreed in their plea agreements, and pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(8)(B), the Court entered criminal forfeiture money judgments against Gagnon and Gines, each for $5,261,218, the entire amount of the conspiracy's proceeds. (Gagnon Forfeiture Order 1:25–2:6, ECF No. 151); (Gines Forfeiture Order 1:22–2:3, ECF No. 158). The Court also ordered both Gagnon and Gines to pay $5,908,726.38 in restitution. (Gagnon J., ECF No. 359); (Gines J., ECF No. 375).

After Gagnon and Gines pleaded guilty, the grand jury returned a Superseding Indictment against Villegas, charging him with one count of Conspiracy to Commit Wire Fraud in Connection with Telemarketing, in violation of 18 U.S.C. §§ 1349 and 2326, and 34 counts of Wire Fraud, in violation of 18 U.S.C. § 1343. (Superseding Indictment, ECF No. 217). Villegas subsequently pleaded guilty to Conspiracy to Commit Wire Fraud in Connection with

1  Telemarketing. (Villegas Mins. Proceedings, ECF No. 297).  Like with Gagnon and Gines, the
2  Court entered a criminal forfeiture money judgment against Villegas in the amount of
3  $5,261,218 and ordered him to pay $5,908,726.38 in restitution. (Villegas Forfeiture Order
4  1:23–2:2, ECF No. 313); (Villegas J., ECF No. 315).  Villegas appealed his Judgment. (Notice
5  Appeal, ECF No. 316).

6      Following the co-conspirators' guilty pleas,[2] the Supreme Court decided *Honeycutt v.*
7  *United States*, which held that forfeitures conducted pursuant to 21 U.S.C. §§ 853(a) and (a)(1)
8  may not impose joint and several liability among co-conspirators. 137 S. Ct. 1626, 1633–35
9  (2017).  Further, *Honeycutt* established that a forfeiture order entered against a defendant is
10 limited to property that that defendant actually acquired as a result of the crime. *Id.* at 1635.  In
11 response to *Honeycutt*, Gagnon and the Government jointly moved to amend her forfeiture
12 Order so that it no longer reflected the total amount of the conspiracy's proceeds, but only the
13 profits of the conspiracy that were processed through her bank accounts: $1,684,462. (Mot.
14 Amend Plea Agreement, ECF No. 348); (Amend. Plea Agreement 3:7–13, ECF No. 352).  The
15 Court reduced Gagnon's criminal forfeiture money judgment to $1,684,462, not to be held
16 jointly and severally liable with any co-defendants. (Mins. Proceedings, ECF No. 353);
17 (Gagnon Order Forfeiture 1:21–26, ECF No. 357).  Similarly, the Court reduced Gines's
18 criminal forfeiture money judgment to $616,046.86, not to be held jointly and severally liable
19 with any codefendants. (Gines Order Forfeiture 1:22–2:1, ECF No. 375).

20     Upon receiving Villegas's appeal, the Ninth Circuit vacated Villegas's forfeiture order
21 and remanded the case for the Court to reassess forfeiture in light of *Honeycutt*. (Mem. USCA
22 at 2, ECF No. 379).  The Government maintains that Villegas's criminal forfeiture money
23 judgment should remain in the amount of $5,261,218. (*Honeycutt* Mot. 24:2–18, ECF No. 388).

24  ───────────────

25 [2] Though *Honeycutt* was decided prior to Villegas's sentencing, neither party discussed the case at sentencing,
and so the Court entered a criminal forfeiture order against Villegas for the entire amount of the conspiracy's
proceeds, $5,261,218, even though Gagnon and Gines also both had forfeiture orders for the same amount.

In contrast, Villegas argues that his criminal forfeiture money judgment should be limited to $156,962. (Resp. *Honeycutt* Mot. 13:10–22, ECF No. 395).

## II.   LEGAL STANDARD

The *in personam* criminal forfeiture money judgment comprises of (1) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343, a specified unlawful activity as defined in 18 USC §§ 1956(c)(7)(A) and 1961(1)(B), or 18 U.S.C. § 1349, conspiracy to commit such offense and (2) any real or personal property constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343, or of 18 U.S.C. § 1349, conspiracy to commit such offense, and is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. §2461(c); 18 U.S.C. § 982(a)(8)(B); and 21 U.S.C. § 853(p).

## III.   DISCUSSION

In its Motion, the Government concedes that *Honeycutt*'s prohibition on joint and several liability applies to Villegas. (Gov.'s Suppl. Brief 12:3–6, ECF No. 405).  Nonetheless, the Government maintains that Villegas still must forfeit $5,261,218— the total proceeds of the conspiracy—despite his co-conspirators already forfeiting a combined amount of $2,300,508.86. (*Id.* 13:21–24).  To rationalize this logic, the Government argues that as the mastermind of the conspiracy, "Villegas obtained, acquired, possessed and used all of the fraudulently obtained illegal proceeds," including the portions already obtained by Gagnon and Gines, because more than one person can obtain, acquire, possess, or use proceeds. (*Id.* 17:21–19:6, 23:11–17).

In contrast, Villegas argues that a forfeiture award in the amount of $5,261,218 violates the holding of *Honeycutt* because it is de facto joint and several liability. (Resp. *Honeycutt* Mot. 1:23–28, 9:20–24, ECF No. 395).  Instead, Villegas contends that pursuant to *Honeycutt*, only one person can ultimately obtain proceeds for forfeiture purposes. (*Id.* 4:3–7).  Villegas thereby

posits that forfeiture in the amount of $5,261,218 cannot be reconciled with the fact that the Government agreed that Gagnon and Gines obtained $2,300,509.48 of the total proceeds. (*Id.* 2:17–20).  Thus, Villegas asserts that his forfeiture is limited to $156,962, the amount the Government has shown was in his bank account. (*Id.* 1:26–28, 12:3–7).  The Court will first address the existence and applicability of the mastermind exception advanced by the Government.

### A. Mastermind Exception to *Honeycutt*

As an initial matter, the Government contends that the language in *Honeycutt* defining "obtained" does not apply to 18 U.S.C. § 981(a)(1)(C). (Reply *Honeycutt* Mot. 3:25–6:21, ECF No. 396); (Gov.'s Reply Suppl. Brief 2:13–3:15, 13:11–16, ECF No. 413).  However, the Ninth Circuit in *United States v. Thompson* confirmed that joint and several liability may not be applied to criminal forfeitures under these statutes and that *Honeycutt's* reasoning applies to these forfeiture statutes. 990 F.3d 680, 689 (9th Cir. 2021) ("We hold that *Honeycutt* does apply to 18 U.S.C. § 981(a)(1)(C).").  Therefore, any argument from the Government to the contrary is foreclosed by binding Ninth Circuit precedent and the Court will not consider those arguments further.

Despite *Honeycutt's* application, the Government nevertheless contends that Villegas should be held liable for the entire proceeds of the conspiracy. (*Honeycutt* Mot. 13:3–4, 16:8–17, 17:3–15); (Reply *Honeycutt* Mot. 7:5–16); (Gov.'s Suppl. Brief 17:26–18:27, ECF No. 405).  In effect, the Government's argument is that *Honeycutt's* analytical framework creates an exception where joint and several liability may apply to the mastermind of a conspiracy. (*Honeycutt* Mot. 13:3–4, 16:8–17, 17:3–15); (Reply *Honeycutt* Mot. 7:5–16); (Gov.'s Suppl. Brief 17:26–18:27).

In *Honeycutt*, the Supreme Court offered the following example:

Suppose a farmer masterminds a scheme to grow, harvest, and distribute marijuana on local college campuses.  The mastermind recruits a college student driver to

deliver packages and pays the student $300 each month from the distribution proceeds for his services. In one year, the mastermind earns $3 million. The student, meanwhile, earns $3,600. If joint and several liability applied, the student would face a forfeiture judgment for the entire amount of the conspiracy's proceeds: $3 million. The student would be bound by that judgment even though he never personally acquired any proceeds beyond the $3,600. This case requires determination whether this form of liability is permitted under § 853(a)(1). The Court holds that it is not.

*Honeycutt*, 137 S. Ct. at 1631–32.

According to the Government, *Honeycutt* thereby distinguishes between a mastermind who controlled the criminal operation and a lowly figure who only had access to and control over a small fraction of the tainted property in his possession. (Gov.'s Suppl. Brief 17:13–27); (Gov.'s Reply Suppl. Brief 5:7–22). Under these circumstances, the former may be held liable for the entire proceeds of the conspiracy. (Gov. Suppl. Brief 19:1–6); *see United States v. Elbelway*, 839 Fed. App'x 398, 400 (11th Cir. 2021) ("Since *Honeycutt,* we have held that conspiracy leaders or 'masterminds' who control criminal enterprises jointly acquire the proceeds of the conspiracy with their co-conspirators.") (citation omitted); *United States v. Bangiyev*, 359 F. Supp. 3d 435, 550 (E.D. Va. 2019) ("[L]ower courts have declined to apply *Honeycutt* in cases where the defendant held a position of control in the criminal operation.") (citations omitted); *United States v. Kenner*, 434 F. Supp. 3d 354, 363 n.8 (E.D. N.Y. 2020) (finding that even if *Honeycutt* applied to § 981(a)(1)(C), joint and several forfeiture lability would be permissible under that statute where the defendant is the "mastermind" of the criminal offense). To date, the Ninth Circuit has not directly addressed whether the Supreme Court's reasoning in *Honeycutt* permits or precludes a mastermind exception. Accordingly, the Court declines to carve out a categorical exception for an alleged leader of a conspiracy. The Court will now address whether the Government's proposed forfeiture order impermissibly imposes joint and several liability on Villegas.

///

### B.  De Facto Joint & Several Liability

The Government advances that it properly limits the forfeiture amount it can collect through the following language: "Therefore, It Is Hereby Ordered, Adjudged, and Decreed that the United States recover from the defendant the *in personam* criminal forfeiture money judgment of $___, not to be held jointly and severally liable with any codefendants, the collected money judgment amount between the codefendants is not to exceed $ ___, . . . ." (Reply *Honeycutt* Mot. 10:10–17).  The Government contends it will "not collectively collect more than the total amount of the illegal proceeds among the defendants based on the forfeiture statute" through its inclusion of the phrase "not to be held jointly and severally liable[.]" (*Id.*); (Gov.'s Suppl. Brief 2:10–12, 17:5–14).  In rebuttal, Villegas contends that this proposed language imposes de facto joint and several liability by holding Villegas liable for proceeds that the parties already agreed came to rest with Gagnon and Gines. (Villegas Resp. Suppl. Brief 16:1–17:10, ECF No. 410).  Further, Villegas contends that the Government's proposal would incentivize Gagnon and Gines to delay payment of their respective forfeiture orders while the Government collects the full amount from Villegas. (Resp. *Honeycutt* Mot. 9:26–10:7); (Villegas Resp. Suppl. Brief 16:22–17:6).

The Court finds that the Government's argument is misleading.  The mere inclusion of language that the forfeiture amount is "not to be held jointly and severally liable with any codefendants" does not make it so. *See Moya*, 18 F.4th at 486 (finding that the government's argument that its forfeiture order did not impose joint and several liability because the phrase was omitted from the forfeiture order was "[t]rue but irrelevant").  In *Thompson*, three defendants stole millions of dollars, and the district court ordered two defendants to forfeit money that had "c[o]me to rest with" the third (a non-appealing defendant). *Thompson*, 990 F.3d at 690–91.  In reversing, the Ninth Circuit held that *Honeycutt* requires courts to determine "how the loot was divided among the conspirators" because each defendant only needs to

forfeit the proceeds that "came to rest" with themselves. *Id.*  The *Thompson* court noted that "[w]hile the judgment may not use the express words 'joint and several' . . . , the district court granted a forfeiture order against Thompson for the whole amount of the proceeds from the conspiracy, despite the fact that some of the proceeds came to rest with Fincher and not Thompson." *Id.* at 690.  Thus, rather than examining the forfeiture order's label, the relevant inquiry concerns whether the order makes an individual liable for "property that was [exclusively] acquired by someone else." *Honeycutt*, 137 S. Ct. at 1632.

As stated, the Government seeks a forfeiture order against Villegas for the total proceeds of the conspiracy, amounting to $5,261,218. (*Honeycutt* Mot. 17:9–15); (Reply *Honeycutt* Mot. 7:5–16).  The Court has already entered Orders of Forfeiture against Gagnon and Gines for $1,684,462 and $626,046.86, respectively. (Gagnon Order of Forfeiture 1:21–22); (Gines l Order of Forfeiture 1:21–22).  The proceeds identified in Gagnon's and Gines Orders of Forfeiture comprise a fraction of the same proceeds the Government requests Villegas to forfeit.  Therefore, the question is whether the imposition of a forfeiture order against Villegas for $5,261,218 would impermissibly hold him liable for property which came to rest with Gagnon and Gines.  Here, the Court finds that it does not.

Unlike the co-conspirators in *Thompson*, in which no co-conspirator exercised sufficient dominion and control of the proceeds at issue to satisfy *Honeycutt*'s rule, Villegas occupied such a position of prominence within the present fraudulent enterprise.  Even after *Honeycutt*, several United States Court of Appeals have found that multiple people can "obtain" the same proceeds when a conspirator benefited from and exerted control over the complete funds and operations of a criminal enterprise. *See United States v. Scarfo*, 41 F.4th 136, 218 (3d Cir. 2022) ("But even after *Honeycutt*, multiple people can 'obtain' the same proceeds over the course of a crime where they jointly controlled the enterprise."); *United States v. Tanner*, 942 F.3d 60, 68 (2d Cir. 2019) ("But when each co-conspirator acquired the full proceeds 'as a

result of the crime,' each can still be held liable to forfeit the value of those tainted proceeds, even if those proceeds are no longer in his possession because they have 'dissipated or otherwise disposed of by 'any act or omission of the defendant.''') (quoting *Honeycutt*, 137 S. Ct. 1631–35); *United States v. Saccocia*, 1 F.4th 64, 71 (1st Cir. 2021) ("Thus, where two individuals, each through their own actions 'obtain' the funds at issue, each may be held liable for forfeiting the amount of funds he or she personally obtained."); *United States v. Cingari*, 952 F.3d 1301, 1305–06 (11th Cir. 2020) (finding defendants liable for a forfeiture money judgment in the total amount of the proceeds generated by the business that profited from the fraud, which they jointly owned).

The concern identified by the Supreme Court in *Honeycutt* was that an individual who only possessed a fraction of the tainted property from a fraudulent enterprise would be held liable for "property that was acquired by someone else." *Honeycutt*, 137 S. Ct. at 1632.  This concern is not applicable here.  As will be discussed below, Villegas's position resulted in his direct and indirect obtainment of the entire proceeds.

The Court further notes that this conclusion does not violate Gagnon's and Gines's Orders of Forfeiture.  Specifically, Gagnon's and Gines' Orders of Forfeiture specified they were "not to be held jointly and severally liable with any codefendants . . . ." (Gagnon Forfeiture Order 1:25–2:5); (Gines Forfeiture Order 1:25–2:5).  Even if the Court found that *Honeycutt* did not apply to Villegas, the parties agree that it applies to Gagnon and Gines. Inherent in finding that Villegas is liable for the complete proceeds of the conspiracy is a determination that he obtained proceeds that Gagnon and Gines also acquired. *See Thompson*, 990 F.3d at 680.  This conclusion, however, does not run afoul of *Honeycutt* because Gagnon's and Gines' Orders of Forfeiture are limited to the amount of tainted property they "actually acquired as the result of the crime." *Honeycutt*, 137 S. Ct. at 1635.  In contrast, this Court would violate *Honeycutt* if it held Gagnon and Gines liable for $5,261,218, because this would

impermissibly hold them responsible for an amount beyond what they obtained from the fraudulent enterprise. *Honeycutt*, 127 S. Ct. at 1632. Therefore, the Court finds that holding Villegas liable for $5,261,218 would not impose de facto joint and several liability in violation of Honeycutt.[3] Accordingly, the Court will now examine the extent of the proceeds which came to rest with Villegas.

### C. Proceeds That Came to Rest with Villegas

As previously mentioned, the Government argues that Villegas should forfeit $5,261,218 because he "obtained, acquired, possessed and used all of the fraudulently obtained illegal proceeds." (*Honeycutt* Mot. 23:11–17, 17:21–19:6). In rebuttal, Villegas contends his forfeiture amount is limited to the money located in his bank account because the rest of the proceeds came to rest with his co-conspirators. (Resp. *Honeycutt* Mot. 10:8–12:7); (Villegas Resp. Suppl. Brief 9:14–10:12). Villegas alternatively argues that the law of the case doctrine prevents this Court from finding him liable for $5,261,218. (Villegas Resp. *Honeycutt* Mot. 11:1–17).

The standard of proof in criminal forfeiture cases is the preponderance of the evidence. *See United States v. Christensen*, 828 F.3d 763, 821–22 (9th Cir. 2016), *cert denied*, 137 S. Ct. 626 (2017), *abrogated on other grounds by Honeycutt*, 137 S. Ct. at 1631–35; *United States v. Shryock*, 342 F.3d 948, 991 (9th Cir. 2003) (holding that "statutorily-prescribed forfeiture is constitutional when supported by the preponderance of the evidence"). In *Thompson*, the Ninth Circuit specifically rejected the government's argument that two co-conspirators were liable for

---

[3] Although a forfeiture order can be imposed against Villegas for $5,261,218, the Government is constrained in executing the forfeiture by the principle that they may only collect the total amount of the proceeds from the conspiracy once. *See United States v. Newman*, 659 F.3d 1235, 1243 n.8 (9th Cir. 2011) ("For example, if the proceeds from a conspiracy equal $10,000, the government may seek forfeiture up to $10,000 from each conspirator, but the sum of the forfeitures may not exceed $10,000."); *Saccoccia*, 1 F.4th at 72 (recognizing that so long as "there is an individualized finding that a defendant "'obtained' the tainted proceeds subject to the government's forfeiture claim" the government may collect that amount "without running afoul of *Honeycutt*" "subject to the constraint" that the government can collect the total proceeds only once).

the entire proceeds of the conspiracy because they "directed the money" to the escrow and trust accounts of three separate lawyers. *Thompson*, 990 F.3d at 691. The *Thompson* court articulated that it did not matter who "directed" the money's distribution or "who at some point had physical control" over the money. *Id.* The Ninth Circuit explained that "*Honeycutt* does not allow for an interpretation that any conspirator who at some point had physical control is subject to forfeiture of all the proceeds." *Id.*

The Ninth Circuit observed, however, that a conspirator could be held liable for the entire proceeds in a conspiracy where the money "came to rest in a joint account, or property owned jointly or as tenants by the entirety" because the co-conspirators "would each have an unfettered right to enjoy the whole . . . ."[4] *Thompson*, 990 F.3d at 691; *see also United States v. Fujinaga*, No. 19-10222, 2022 WL 671018, at *6 (9th Cir. Mar. 7, 2022) (finding that *Thompson* did not apply where the "district court found that Fujinaga had full and exclusive authority over the accounts" because "*Thompson*, like *Honeycutt*, did not involve a situation in which the defendant had exclusive control of the property"). However, the *Thompson* court found that the co-conspirators were not liable for the entire proceeds because "the trust accounts and escrows were stops on the way to splitting up the money, not jointly controlled deposits where the money came to rest after the swindlers split it up." *Thompson*, 990 F.3d at 691. Accordingly, the *Ninth Circuit* found that in a case with multiple co-conspirators, separate forfeiture orders should issue only "for approximate separate amounts that came to rest with each party." *Id.* at 692.

///

---

[4] The Ninth Circuit referenced *United States v. Cingari*, 952 F.3d 1301 (11th Cir. 2020). In *Cingari*, the Eleventh Circuit explained that "*Honeycutt* turned on the employer-employee relationship: the employer, as owner of the business, obtained the profits [of illegal sales]; the salaried employee never saw the fruits of his criminal labor." *Id.* at 1306. In contrast to the circumstances in *Honeycutt*, the *Cingari* court found that the district court appropriately applied joint and several liability to a married couple "who jointly operated their fraudulent business" and deposited the proceeds of their operation in a jointly owned bank account. *Id.*

As stated, Villegas contends that pursuant to *Thompson*, his forfeiture amount is limited to the money located in his bank account because the rest of the proceeds came to rest with his co-conspirators. (Resp. *Honeycutt* Mot. 10:8–12:7); (Villegas Resp. Suppl. Brief 9:14–10:12). This argument erodes the distinction between the obtainment of fraudulent proceeds and disposition of those proceeds.  Forfeiture exists to punish those who commit crimes. *See United States v. Davis*, 706 F.3d 1081, 1084 (9th Cir. 2013).  Villegas' construction of forfeiture would undermine its very purpose by concluding that a defendant does not obtain proceeds merely because they direct a co-conspirator to dispose of proceeds in another person's bank account despite the defendant exercising dominion over the funds in said account by virtue of their position within the fraudulent enterprise. *See United States v. Bradley*, 969 F.3d 585, 589 (6th Cir. 2020) (finding that the relevant inquiry is "whether the defendant obtained the money, not whether he chose to reinvest it in the conspiracy's overhead costs, saved it for a rainy day, or spent it on 'wine, women, and song'") (quoting *United States v. Newman*, 659 F.3d 1235, 1243 (9th Cir. 2011) (quotation omitted).  This reasoning would allow criminals to avoid liability by allocating across or reinvesting into the criminal enterprise. *See United States v. Prasad*, 18 F.4th 313, 321 (9th Cir. 2021) (finding that construing "proceeds" as profits would allow a "defendant to defeat the United States' vested claim to property obtained from the commission of the crime by reinvesting that property into the criminal enterprise before his conviction, rather than pocketing it as profit").  Unlike in *Thompson*, Villegas never relinquished control of the proceeds such that they were disposed of to his co-conspirators. *See Thompson*, 990 F.3d at 691–92 (holding that a co-conspirator can only be required to forfeit proceeds that "came to rest" with him); *United States v. Vescuso*, 856 Fed. App'x 742, 743 (9th Cir. 2021) ("A co-conspirator can be ordered to forfeit only the amount that 'came to rest with him as a result of his crimes.' Because Vescuso and his co-conspirator shared the proceeds of the conspiracy, the full $555,640 did not 'come to rest' with Vescuso.") (citation omitted).

The facts of this case prove, by a preponderance of the evidence, that Villegas obtained $5,261,218, which he transacted or caused to be transacted through bank accounts managed by his co-conspirators. In executing the scheme, Villegas directed his co-conspirators to open bank accounts and collect payments, and subsequently monitored these accounts. (Villegas Plea Agreement 6:3–12). Further, Villegas admitted to running money through his co-conspirator's bank accounts, directing his co-conspirators to transfer money, and paying the co-conspirator named on the bank account a percentage fee. (*Id.*); (Change Plea Transcript 31:2–11, 32:23–35:15, ECF No. 346). At Villegas's sentencing, both Gagnon and Gines testified that Villegas exercised dominion and control over the bank accounts they opened, gave definitive commands to employees, and directed the disbursement of funds for the fraudulent scheme. (Sentencing Transcript 33:3–34:12, 58:12–59:14, 60:1–9, 69:18–70:2, ECF No. 347). Villegas's leadership, evidenced by his supervision of individuals who were collecting and distributing fraudulent proceeds, demonstrates his control over the proceeds of the criminal enterprise. Thus, Villegas maintained an "unfettered right" to direct the proceeds of the conspiracy despite the proceeds residing in a bank account that was not registered in his name. *Thompson*, 990 F.3d at 691.

Villegas alternatively contends that the law of the case doctrine precludes this Court from finding that Villegas obtained the same proceeds that Gagnon and Gines were previously determined to have obtained. (Villegas Resp. *Honeycutt* Mot. 11:1–17). In rebuttal, the Government contends that the Gagnon's and Gines' forfeiture orders do not preclude a finding that under *Honeycutt*, more than one person can obtain the same proceeds. (Reply *Honeycutt* Mot. 12:1–21).

"Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc). "For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in

[the] previous disposition.'" *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988). Exceptions to the law of the case doctrine include where "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Gonzalez*, 677 F.3d at 389 n.4 (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1488–89 (9th Cir. 1997) (en banc).

At its core, Villegas' argument is that Gagnon's and Gines' forfeiture orders are a preclusive determination that $2,300,508.86 in proceeds came to rest with them.  Therefore, the Government cannot contend that Villegas also obtained the $2,300,508.86 in proceeds because this would constitute a reconsideration of an issue explicitly decided by this Court. (Resp. Honeycutt Mot. 11:1–7); *see Richardson*, 841 F.2d at 996.  The Court finds this argument misapplies the law of the case doctrine.

Villegas's argument begins and ends with the proposition that only one person can obtain proceeds.  For the reasons set forth above, however, the Court disagrees.  Here, the Court has not rendered a prior determination concerning the extent of the proceeds Villegas obtained. *See United States v. Miller*, No. 17-cr-213, 2019 WL 6792762, at *4 (E.D. Va. Dec. 12, 2019) (finding that the Fourth Circuit's decision affirming the district court's tracing analysis of the fraudulent proceeds attributable to the defendant was the law of the case). Gagnon's and Gines' Orders of Forfeiture are only explicit determinations of the tainted proceeds they personally obtained.  Thus, the Court is not cabined into finding that Villegas could not have obtained the same proceeds as Gagnon and Gines.

Accordingly, the Court will enter a criminal forfeiture money judgment against Villegas in the amount of $5,261,218.

///

///

1

**IV.** **<u>CONCLUSION</u>**

2       **IT IS HEREBY ORDERED** that the Government's Motion to Apply *Honeycutt* to

3   Defendant Gregory Villegas's Forfeiture Order, (ECF No. 388), is **GRANTED**.

4       **DATED** this __5__ day of December, 2022.

5

6                                         _____

7                                         Gloria M. Navarro, District Judge
                                          United States District Court
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25